UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
CABLEVISION SYSTEMS NEW YORK CITY
CORPORATION,

                            Plaintiff,

- against -

PETER K. THOMAS,
                            Defendant.
-----------------------------------------------------------X

**REPORT AND RECOMMENDATION**
04-CV-5519 (NGG) (JMA)

A P P E A R A N C E S:

    Patrick J. Sullivan
    Lefkowitz, Louis, Sullivan & Hogan, LLP
    350 Jericho Turnpike, Suite 300
    Jericho, New York 11753

    Melinda M. Dus
    Lefkowitz, Louis, Sullivan & Hogan, LLP
    350 Jericho Turnpike, Suite 300
    Jericho, New York 11753
    *Attorneys for Plaintiff*

**AZRACK, United States Magistrate Judge**:

By Order dated April 6, 2005, the Honorable Nicholas G. Garaufis referred the above captioned matter to me, pursuant to 28 U.S.C. § 636(b), for a report and recommendation regarding plaintiff Cablevision's application for damages and reasonable attorneys' fees against defendant Peter K. Thomas, for alleged violations of the Cable Communications Policy Act. In addition, plaintiff requests a permanent injunction restraining defendant from further violating 47 U.S.C. §§ 553(a)(1) and 605(a).

For the reasons set forth below, I respectfully recommend that judgment be entered against defendant, in the amount of $6,827.66, reflecting $5,534.00 in statutory damages, as well as

$1,293.66 for attorneys' fees and costs. I further recommend that plaintiff's request for a permanent injunction be denied.

## I. BACKGROUND

"Where, as here, 'the court determines that defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'" Chen v. Jenna Lane, Inc., 30 F. Supp. 2d 622, 623 (S.D.N.Y. 1998) (quoting 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2688, at 58-59 (3d ed. 1998)).

Plaintiff, Cablevision Systems New York City Corporation ("Cablevision"), a division of CSC Holdings, Inc., is a cable television operator that Kings County awarded franchises and authorized to construct, operate and maintain cable television systems in parts of Kings County (Dkt No. 1: Compl. (12/16/04) ¶ 6; Dkt No. 8: Mot. for Att'ys Fees (03/30/06), Aff. of Donald Kempton, March 15, 2006 ("Kempton Aff.") ¶ 2). Cablevision's programming is offered to residential and commercial customers and consists of different tiers of programming service (Kempton Aff. ¶ 3).

The signals for the programming services are transmitted to Cablevision's reception facilities through various means of over-the-air radio transmission. Cablevision then retransmits these signals to customers' homes and businesses through a network of cable wiring and equipment (Id. ¶ 8). Cablevision provides its customers with a device known as a "converter," which converts the multiple signals into different television channels (Id. ¶ 10). Each customer is entitled to receive only the programming services that he or she selects and purchases (Id. ¶ 7).

In order to prevent unauthorized viewing of its programming, Cablevision encodes, or "scrambles," the signals for specific programming services. This security feature prevents non-

paying customers from illegally receiving the service (Id. ¶ 9). Each paying customer receives a "decoder," which is incorporated into the converter and decodes the scrambled signal so that the customer can view the programming services that he or she has purchased (Id. ¶ 10).

Customers can defeat the encoding system either through the purchase and installation of an unauthorized "pirate" converter-decoder or by tampering with a legitimate converter (Id. ¶¶ 14, 15). This will allow a customer to descramble all of Cablevision's programming services without authorization (Id.).

Following Cablevision's investigation of a business known as Explorer Electronics ("Explorer"), plaintiff encountered evidence of defendant's alleged tampering (Id. ¶ 16). Cablevision's investigation indicated that Explorer, located in Dyer, Indiana, was engaged in the sale and distribution of "pirate" converter-decoders (Id.). These devices would allow a user to receive all of Cablevision's analog-based scrambled premium and pay-per-view programming services without authorization (Id. ¶ 17). During the course of the investigation, Cablevision recovered and copied Explorer's computer database information containing information as to its sales and shipments of "pirate" converter-decoders to purchasers across the United States (Id. ¶ 19). Explorer's records indicated that defendant purchased two "pirate" converter-decoders on December 17, 2001, for $419.00[1] (Id., Ex. C).

Defendant became a Cablevision customer on April 12, 1995. From the time defendant purchased the converter in December, 2001 through July, 2004, he continued to subscribe to Cablevision's Basic level of service for approximately $23.00 per month (Id. ¶ 20). A residential customer subscribing to the full-range of Cablevision's programming services would have paid

---

[1]Each "pirate" converter-decoder cost $197.00, plus $25.00 in shipping costs.

approximately $80.00 per month (Id. ¶ 4). Defendant upgraded to Cablevision's Family level of service and added digital service in July 2004 (Id. ¶ 20).

Plaintiff commenced the instant action against defendant on December 16, 2004. After having been personally served with copies of the Summons and Complaint, defendant failed to answer or otherwise move with respect to the Complaint and the time to do so has expired. As a result, a notation of default was entered by the Clerk of the Court on March 31, 2005 (Dkt No. 6). On April 6, 2005, Judge Garaufis referred this matter to me for a report and recommendation regarding plaintiff's application for damages and reasonable attorneys' fees.

## II. DISCUSSION

### A. Default

Defendant's default amounts to an admission of liability. Therefore, all of the well-pleaded allegations in plaintiff's Complaint pertaining to liability are deemed true. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993). Plaintiff, however, must prove damages before the entry of a final default judgment. See Credit Lyonnais Sec., Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999); Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981). The district court must conduct an inquiry to ascertain the amount of damages with reasonable certainty. See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997). Rule 55(b)(2) of the Federal Rules of Civil Procedure provides that, when granting a default judgment, if "it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence . . . the court may conduct such hearings or order such references as it deems necessary and proper . . . ." The Second Circuit has held that, under Rule 55(b)(2), "it is not necessary for the

4

District Court to hold a hearing, as long as it ensured that there was a basis for the damages specified in the default judgment." Transatlantic Marine, 109 F.3d at 111 (citation and internal quotations omitted).

Plaintiff has submitted the following documentation for the court's review: 1) a Memorandum of Law; 2) an affidavit from Donald Kempton, Manager of Investigations for CSC Holdings, Inc.; and, 3) an Affirmation of Services from attorney Michael D. Cassell. The Court finds that these documents constitute sufficient evidence to form the basis for an award of damages.

**B. Damages**

Plaintiff seeks statutory damages for defendant's violations of the Cable Communications Policy Act, as amended, 47 U.S.C. §§ 553(a)(1) and 605(a). The court has discretion in assessing the amount of damages under these provisions. See Time Warner Cable of N.Y. City v. Taco Rapido Rest., 988 F. Supp. 107, 110 (E.D.N.Y. 1997). Section 553(a)(1) prohibits persons from "intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so . . . ." 47 U.S.C. § 553(a)(1). Section 605 prohibits the unauthorized interception and publication of any "radio communication." Id. § 605(a).

Where, as in this case, defendant admits to violating both sections, a plaintiff may elect to recover damages under § 605, which provides for greater recovery than § 553. See Int'l Cablevision, Inc. v. Sykes, 75 F.3d 123, 127 (2d Cir. 1996). Section 605 states that where a plaintiff is unable to provide evidence of the extent of any violations, the plaintiff may elect to recover statutory damages, rather than actual damages. See 47 U.S.C. § 605(e)(3)(C)(i)(II). As a result of defendant's default, Cablevision has been unable to ascertain the extent of defendant's violations. Plaintiff has therefore elected to recover statutory damages.

5

The range of statutory damages for a violation of § 605(a) is $1,000 to $10,000. Id. The court has discretion to determine the number of violations and assess damages for each violation. Id. The statute does not clearly define "violation." It is therefore left to the court to decide which acts constitute a violation. A review of recent case law indicates that courts have utilized a variety of methods. See, e.g., Cablevision Sys. N.Y. City Corp. v. Collins, No. 01 Civ. 10954, 2004 WL 1490307, at *5 (S.D.N.Y. June 29, 2004) (estimating the number of pay-per-view events watched by defendant); Time Warner Cable of N.Y. City v. Foote, No. CV-99-4974, 2002 WL 1267993, at *6 (E.D.N.Y. Mar. 22, 2002) (adding a $75 penalty to the monthly assessment of damages).

In the past, I have defined a "violation" as the number of illegal devices used to receive free programming. See, e.g., Time Warner Cable of N.Y. v. Crawford, No. 94-CV-2964, slip op. at 9 (E.D.N.Y. Feb. 22, 1996). For each illegal device, I granted statutory damages in the amount of $1,000.00. See id. at 12. In addition, there are statutory damages for each month that defendant had access to the unauthorized programming. See id. This monthly figure is calculated by taking the difference between what defendant should have paid for premium cable service and what was actually paid and doubling it. See, e.g., Time Warner Cable of N.Y. City v. McGuigan, No. CV-01-5865, slip op. at 5 (E.D.N.Y. June 26, 2002) (Azrack, Mag. J.). This assessment of damages is reasonable in that it considers the actual price of the unauthorized programming as well as the need to punish the defendant and to deter the prohibited conduct.

Defendant purchased two "pirate" converter-decoders on December 17, 2001 (Dkt No. 8: Pl.'s Mem. of Law (03/30/06) at 4). At this time, he was paying approximately $23.00 per month for Cablevision's Basic level of service (Id.). During that time period, a residential customer would have paid $80.00 per month for the full range of Cablevision's premium services (Kempton Aff.

6

¶ 4). Defendant upgraded to Cablevision's Family level of service and added digital service in July 2004 (Pl.'s Mem. of Law at 4). Defendant's upgrade of his Cable package is an indication that he was no longer using the converter as of July 2004. See V Cable, Inc. V. Guercio, 148 F. Supp. 2d 236, 245 (E.D.N.Y. 2001) (court used defendant's Cablevision subscription package to assess whether defendant was using the converter in his home). The relevant time period for the calculation of damages in this case is from the converter purchase in December 2001 through the subscription upgrade in July 2004. Accordingly, I respectfully recommend that Cablevision be awarded statutory damages in the amount of $5,534.00.[2]

**C. Permanent Injunction**

Plaintiff also requests a permanent injunction enjoining defendant from further violating sections 553 or 605 (Compl. ¶ 32-33). Plaintiff contends that defendant will continue to violate sections 553 and 605 unless restrained by this Court. (Id.)

A court may "issue an injunction on a motion for default judgment provided that the moving party shows that (1) it is entitled to injunctive relief under the applicable statute and (2) it meets the prerequisites for the issuance of an injunction." Main Events/Monitor Prods. v. Batista, No. 96-CV-5089, 1998 WL 760330, at *1 (E.D.N.Y. Aug. 26, 1998). The first condition is satisfied because injunctions are available remedies pursuant to §§ 553(c)(2)(A) and 605(e)(3)(B)(i). Second, a party seeking a preliminary injunction must demonstrate irreparable harm and the absence of an adequate remedy at law. See Rondeau v. Mosinee Paper Corp., 422 U.S. 49, 57 (1975); see also N.Y. State

---

[2]This sum was derived by taking the difference between the monthly cost of full premium services ($80.00) and the monthly amount paid by defendant ($23.00) and multiplying it by the number of months defendant used the two "pirate" converters (December 2001-July 2004 (31 months)). This figure was then doubled. In addition, $1,000.00 was added on for each "pirate" converter-decoder.

7

Nat'l Org. for Women v. Terry, 886 F.2d 1339, 1362 (2d Cir.1989). Plaintiff has failed to satisfy this condition. In this case, there is no evidence that plaintiff will suffer irreparable harm or that the statutory damages are insufficient to deter future conduct. I therefore recommend that plaintiff's request for a permanent injunction be denied.

### D. Attorney's Fees and Costs

#### 1. Attorney's Fees

Finally, plaintiff is seeking an award of attorneys' fees and costs pursuant to 47 U.S.C. § 605(e)(3)(B)(iii). (Pl.'s Mem. of Law at 8–9.) Under the "lodestar" method, attorneys' fees are determined by taking "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); see also Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1058 (2d Cir. 1989), cert. denied, 496 U.S. 905 (1990). Reasonable hourly rates are determined by reference to the "prevailing [marketplace rates] in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Cruz v. Local Union No. 3, 34 F.3d 1148, 1159 (2d Cir. 1994) (citation omitted). To receive such fees, a plaintiff must present time records to substantiate its fee request. See N.Y. Ass'n for Retarded Children v. Carey, 711 F.2d 1136, 1147-48 (2d Cir. 1983). Such time records must be contemporaneous and indicate "for each attorney, the date, the hours expended, and the nature of the work done." Id. at 1148.

To support plaintiff's request for attorney's fees, attorney Michael D. Cassell submitted an affidavit memorializing the attorneys and paralegals who worked on this matter, their professional experience, and their billing rates (Dkt No. 8: Mot. for Att'ys Fees (03/30/06), Affirm. of Serv. in Supp. of Inquest, Aff. of Michael D. Cassell, March 29, 2006 ("Cassell Aff.") ¶¶ 3–6). Plaintiff

8

seeks legal fees for three flat rate tasks amounting to $1,100.00. These tasks include the drafting of the Summons and Complaint ($300), drafting all papers relating to the default ($200), and drafting all papers relating to the damages submission ($600). (Id. ¶ 8.) In the past, courts have rejected recovery of pre-arranged flat fees. See Cablevision Sys. N.Y. City Corp. v. Diaz, No. 01 Civ. 4340, 2002 WL 31045855, at *5 (S.D.N.Y. July 10, 2002). However, recent case law suggests that flat rate fees are recoverable. See CSC Holdings, Inc. v. Khrisat, No. 04-CV-8592, 2005 WL 3030838, at *5 (S.D.N.Y. Nov. 8, 2005). Plaintiff must present contemporaneous time-records that articulate the attorney or paralegal who performed the particular task, the date upon which the task was completed, and the nature of the task. Id. Mr. Cassell's affidavit includes time sheets for the three pre-arranged flat rate tasks. Each sheet indicates the individual who completed the task, the date in which it was performed, and the nature of the task. (See Cassell Aff. Ex. E, F, H.) I find these rates to be reasonable.

The balance of the legal fees sought reflects work performed by plaintiff's counsel billed at an hourly rate. The contemporaneous time sheets reflect a total of 4 hours of work performed during the pendency of this action, amounting to $545.00. (Id. ¶¶ 13–16.) Mr. Cassell affirms that the attorneys expended a total of 2.3 hours, reflecting, 1.5 hours attending an Initial Conference before this Court and 0.8 hours reviewing orders and drafting letters. (Id. Ex. F, G.) Mr. Cassell also affirms 1.7 hours of paralegal time at a rate of $95.00 per hour. (Id. Ex. H.) It is unreasonable for plaintiff to recover attorneys' fees under both schemes. The work performed at an hourly rate is reasonably related to the flat rate tasks. (See id. Ex. E, F, G, H.) Morever, a review of previous 47 U.S.C. §§ 553 and 605 actions reveals attorneys' fees of approximately $1,100.00 are appropriate for this action. See, e.g., Kingvision Pay-Per-View, Ltd. v. Lalaleo, --- F. Supp. 2d ---, No. 05-CV-

9

2659, 2006 WL 1071885, at *9 (E.D.N.Y. Apr. 24, 2006) (awarding $1,325.00 in attorneys' fees); Garden City Boxing Club, Inc. v. Rosado, CV-05-1037, 2005 WL 3018704, at *6 (E.D.N.Y. Oct. 6, 2005) (awarding $1,312.50 in attorneys' fees); Garden City Boxing Club, Inc. v. Bello, CV-05-1300, 2005 WL 2496062, at *5 (E.D.N.Y. Sept. 20, 2005) (awarding $825.00 in attorneys' fees). Accordingly, I respectfully recommend that plaintiff be awarded $1,100.00 for reasonable attorneys' fees.

### 2. Costs

Pursuant to 47 U.S.C. § 605(e)(3)(B)(iii), plaintiff seeks reimbursement for costs in the amount of $193.66, which includes $150.00 for the court filing fee, $37.00 for the cost of service of process, and $6.66 for travel costs (Cassell Aff. ¶ 17). Plaintiff submitted documentary evidence to substantiate its request. I find these amounts to be reasonable. Accordingly, I respectfully recommend that plaintiff's request for $193.66 in costs be granted.

### III. CONCLUSION

For the above reasons, I respectfully recommend that judgment be entered against defendant, in the amount of $6,827.66, reflecting $5,534.00 in statutory damages, as well as $1,293.66 for attorneys' fees and costs. I further recommend that plaintiff's request for a permanent injunction be denied.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within ten (10) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: June 20, 2006
      Brooklyn, New York

                                            /s/
                                        JOAN M. AZRACK
                                        UNITED STATES MAGISTRATE JUDGE

Copies also mailed to:

      Peter K. Thomas
      861 East 48th Street
      Brooklyn, New York 11203
      *Defendant*